ECONOMIC MACHINERY CO. v. BERRY et al.

(Circuit Court of Appeals, First Circuit. April 24, 1914.)

No. 1018.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—BOTTLE-LABELING MACHINE.

The Gaynor patent, No. 705,832, for a labeling machine for affixing labels to bottles and similar articles, claim 1, while broad in its terms, must be limited to avoid anticipation in the prior art to the specific features pointed out in the specification; as so construed, held not infringed by a machine constructed in accordance with the Ermold patents, Nos. 923,501 and 950,259.

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—BOTTLE-LABELING MACHINE.

The Woodland patents, No. 937,403 and No. 941,178, for labeling machines for affixing labels to bottles and similar articles, so far as relate to the claims which disclose patentable invention, are very narrow and limited, covering only specific improvements in an advanced and highly developed art; as so construed, held not infringed by machines constructed in accordance with the Ermold patents, Nos. 923,501 and 950,259.

Appeal from the District Court of the United States for the District of Massachusetts; Le Baron B. Colt, Judge.

Suit in equity by the Economic Machinery Company against Casper Berry and others. Decree for defendants, and complainant appeals. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The following is the opinion of the District Court, by Colt, Circuit Judge:

This suit is brought for infringement of three patents for labeling machines for affixing labels to bottles and similar articles: The Gaynor patent, No. 705,882, dated July 29, 1902; the Woodland patent, No. 937,403, dated October 19, 1909; the Woodland patent, No. 941,178, dated November 23, 1909. The application for the first Woodland patent was filed April 24, 1903, and for the second Woodland patent March 10, 1904.

The claims in issue are as follows: Claim 1 of the Gaynor patent; claims 4, 6, 12, 36, 52, 53, 56, 59, of the first Woodland patent; claims 6, 10, 11, 27, 30, 31, 42, 43, 44, 45, 46, 58, 59, 60, 67, 71, of the second Woodland patent.

The defendants' machine is shown and described in two patents granted to Edward Ermold and numbered, respectively, 923,501 and 950,259. The application for the first of these Ermold patents was filed July 23, 1908, and the patent granted June 1, 1909; and the application for the second Ermold patent was filed August 7, 1909, and the patent granted February 22, 1910.

The complainant called a single expert witness, and also Mr. Woodland, who testified as to the building of one machine in accordance with the first Woodland patent, and the date of its construction.

The defendants called a single expert witness, and also introduced in evidence 36 patents illustrating the prior art. Of these patents some 24 relate to labeling machines for affixing labels to bottles and similar articles.

With respect to this testimony it may be here noted that, in a case involving the construction of 25 claims in 3 patents in a highly developed art, the evidence is substantially confined to the contradictory views of two experts, and that no practical witnesses familiar with the art have been called to testify as to the relative utility, efficiency, and commercial value of the machines of the patent in suit as compared with the machines of the prior art. The evidence also fails to disclose, except as to some details, any satisfactory examination and analysis of the mechanism embodied in the defendants' machine.

A labeling machine for attaching labels to bottles and similar articles may be said to consist, as a general rule, of six groups of instrumentalities:

(1) The label box for holding the labels, and, if the box is movable, mechanism for actuating it.

(2) Picker devices for taking the labels one by one from the box and bringing them to the bottle, and mechanism for actuating these devices.

(3) Pasting rolls for applying paste to the pickers in order to enable the pickers to attach themselves to a label and remove it from the box, and mechanism for actuating these devices.

(4) A grip finger or clamping device for holding the label to the bottle while it is being detached from the pickers, and mechanism for actuating this device.

(5) Wipers for wiping the label over the bottle after it has been detached from the pickers, and mechanism for actuating these devices.

(6) The bottle rest against which the bottle lies while receiving its label.

These instrumentalities are brought into operation in the machine in the following order:

First. The pickers receive their coating of paste.

Second. The pickers are brought into contact with a label in the label box.

Third. The label is brought to the bottle.

Fourth. The grip finger holds the label to the bottle while the pickers detach themselves from the label.

Fifth. The wipers wipe the label upon the bottle.

A machine which embodies these instrumentalities and this cycle of operations necessarily comprises many parts, and these parts must be so constructed and arranged as not to interfere with each other in the operation of the machine.

Speaking generally, these machines may be divided into three types: The horizontal type, where the parts are arranged in horizontal alignment; the vertical type, where the parts are arranged in vertical alignment; and the mixed type, where the parts are arranged partly in horizontal and partly in

vertical alignment—and each of these types presents a different problem with respect to the construction and adjustment of these several parts and the mechanism adapted to actuate these parts.

Again, within each of these types there is still left a wide field for diversity in the arrangement of the several parts, in the mechanism employed to actuate these parts, and in the specific mechanism for each separate part.

The Gaynor patent in suit, No. 705,832, is for a machine of the vertical type and designed to affix two labels to a bottle. It is for improvements upon a prior patented machine of the same type by the same inventor. The patent says:

"The object of this invention is to provide a simple and easily-operated machine for affixing labels to bottles, cans, and the like, and especially a plurality of labels simultaneously to the neck and body of the bottle; and the new features thereof consist of improvements upon the machine shown and described in the patent for a 'labeling-machine' granted to me on the 10th day of December, 1901.

"One important feature of novelty in the machine herein shown and described is a label-holder; that is, means for holding the label centrally lengthwise of the bottle against the under side of the bottle while the label-carrying plates are moving away from the label and the label is being affixed to the bottle. Such means is so moved and controlled that it moves from the side into a position between the label-support and the label-carrying plates and bottle above and follows the same upward until the bottle is stopped, when it engages the labels centrally on the under side of the bottle and holds them while being affixed."

Figures 1 and 8 of the patent show the Gaynor machine and the "label-holder" or grip finger:

The "label-holder" or grip finger, which Gaynor here says is the important feature of novelty, and which is shown in Figure 8, is described in the patent as follows:

"The preferable form and construction of the label-holder is shown in Figs. 8 and 9. The label-holder 8 is made to conform substantially to the form of the bottle lengthwise. It is pivotally mounted near its center on the upper end of the bar 11 by the pin 77, so it can rock, and thereby conform to variations in the shapes of bottles. Its rocking movement is limited by the spring 12, mounted on the projection 74 from the upper end of the bar 11. To cause said label-holder to be more accurate in its accommodation to bottles of various sizes and shapes and to hold more positively the labels in its grasp when it moves upward and presses the labels against the bottle, the label-holder 8 is longitudinally and centrally provided with a channel 75, and in said channel two blocks 13 and 14, made of rubber or other cushionlike material, are centrally pivoted to the label-holder 8, so as to rock and extend above the edges thereof to engage the labels. One of these, 14, is curved to conform to the shape of the neck of the bottle and the other, 13, is straight for engaging the body of the bottle. Their rocking movements are limited by the springs 76, placed in the channel 75."

The claim in issue reads as follows:

"(1) In a labeling-machine, oppositely-placed pairs of label-carrying plates that bring the labels into position against the neck and body of the bottle or the like for being affixed, and a label-holder that conforms to the neck and body of the bottle and which enters between said plates and holds the labels centrally lengthwise against the neck and body of the bottle while being affixed."

This is a broad claim for any grip finger that conforms to the neck and body of the bottle and which enters between oppositely-placed pairs of label-carrying plates and holds the labels centrally lengthwise against the neck and body of the bottle while being affixed.

Viewing this claim in the light of the prior art, we find that its main features, broadly speaking, were old. For example, the prior art, as illustrated in the Tyrrell patent, No. 115,789, shows a grip finger which enters between the pickers and holds the label against a box or like article.

Again the prior art, as illustrated in the Pettee patents, Nos. 597,858 and 675,013, shows grip fingers in a machine which affixes two labels to a bottle by means of two pairs of picker devices.

Further, there was nothing new at the date of the Gaynor invention in the general idea of conforming the grip finger to the article to be labeled. The specification of the Tyrrell patent says:·

"This clamping arm has a finger, $a^1$, pivoted to the end for adjusting to the surface of the box at the time it acts on the label so as to bear alike all the way across it; and the finger is provided with a cushion of elastic substance, $c^1$, to prevent striking a hard blow and macerating or cutting the paper."

What Gaynor invented and all he invented in view of the prior art, was a special form of grip finger which conforms to the bottle and was adapted to operate in his machine as organized. This special form of grip finger is shown in Figure 8 and described in the specification as above cited.

Under these circumstances, I am of the opinion that claim 1 of the Gaynor patent must be limited substantially to the means described in the specification and shown in Figure 8 for *conforming* the grip finger to the neck and body of the bottle. In other words, that the claim, by reason of the prior art, should not be construed to cover any grip finger which conforms in any way to the neck and body of a bottle, in a machine which is organized to attach both a body label and a neck label to a bottle.

The defendants' machine, which is radically different in its general organization, does not use a grip finger containing the special features of conformity described in the Gaynor patent and shown in Figure 8. In the first place, it is not made to conform substantially to the bottle lengthwise as described in the Gaynor patent and shown in Figure 8. In substance it resembles more

an extension of the Tyrrell grip finger. In the second place, it is not pivotally mounted near its center to conform to variations in the shape of the bottle, as described in the Gaynor patent and shown in Figure 8. On the contrary, it is pivoted at one end as found in the prior art. In the third place, it has not the spring *12* which limits the rocking movement, nor the two centrally pivoted channel blocks *13* and *14* which secure a more accurate accommodation to bottles of various sizes and shapes, as described in the Gaynor patent and shown in Figure 8.

The defendants' grip finger is shown in Figure 4 of Ermold patent, No. 923,501, and, without entering into a further description of this device, it is clear to my mind that it does not infringe claim 1 of the Gaynor patent when properly construed and limited in view of the prior state of the art.

The main argument of the complainant in regard to the Gaynor grip finger seems to be that there was a broad invention in the idea of a single grip finger which holds two labels in two different planes; in other words, of a grip finger having a structural form which accommodates itself to the neck and body of a bottle. I do not concur in this view. On the contrary, it seems to me that this broad idea of conformity would suggest itself to any skilled mechanic; and further it appears that this general idea of conformity was old in the art. What I consider to be the real essence of this feature of the Gaynor invention lies in the specific means he devised for conforming the grip finger to the bottle, and in the specific means he devised for incorporating this grip finger in his machine.

The first Woodland patent, No. 937,403, is a machine of the vertical alignment type, the same as the Gaynor machine. It attaches one label to a bottle, and it does not employ any grip finger; the wipers performing the double function of grip finger and wipers. The Gaynor machine attaches labels to the under side of the bottle, and consequently the label box is below the bottle, and the pickers move upwards with the labels; in other words, the operating parts, generally, are arranged below the bottle.

The Woodland machine differs from this organization in two respects: First, it attaches the label to the upper side of the bottle, and consequently the label box, pickers, and operating parts generally are arranged in vertical alignment above the bottle, and operate from above; and, second, there is a movable label box, instead of a stationary label box (that is, the label box delivers the label to the pickers located directly over the bottle support, instead of the pickers taking the labels from a stationary label box and delivering them directly over the bottle support). In a word, the two characteristic features of this Woodland machine are the location of the parts in vertical alignment above the bottle and a movable label box.

In describing the invention covered by this Woodland patent, the specification says:

"The object of my present invention is to provide a practical and efficient mechanism for affixing labels to bottles and articles to which labels can be applied in similar manner, and to render said mechanism convenient for attendance and capable of rapid action, while affording ample time for the attendant to remove and replace the bottles while the machine is in operation.

"Another object is to provide, in a machine for the purpose specified, label-feeding mechanism that will obviate liability of occasionally dropping, skipping, or displacing of labels, and to render the machine sure and accurate in its presentation and affixment of the labels.

"My invention in its embodiment comprises a stationary supporter for the bottle or article to be labeled, an upwardly and downwardly movable label-holder, from the bottom of which the labels are delivered directly over said bottle supporter, a pair of laterally movable pickers or paste applying members, upon which the label-holder descends and which receive the labels singly therefrom, a pair of wiping-on devices that have upward and downward motion and lateral or outward swinging action, and which also serve for primarily advancing and gripping the label to the bottle surface, a paste-box or reservoir with delivering rolls, a reciprocatory frame or oscillator carrying

rollers for transferring a suitable film of paste or adhesive from the delivering roll to the paste applying pickers, a suitable supporting frame and means for imparting to the several above-mentioned parts power and motion for performing their various functions in their proper time.

"My invention also comprises features of novelty in the construction of the mechanism in various parts, and in the combination and mode of operation thereof, as will be more fully explained; the peculiar features of my invention being hereinafter specified in detail, and the particular subject-matter claimed expressly defined in the summary."

This Woodland machine is illustrated in Figure 1 of the patent:

Fig.1

We will first consider what the complainant has classified as the broad claims of this patent, namely, claims 4, 6, 52, 53, 56. Of these claims it is sufficient to cite the first two:

"(4) In a labeling machine, the combination, of a stationary bottle-supporting device, a pair of paste-applying label-picker devices for adhesively engaging the respective ends of a label, a pair of downwardly-acting laterally-separable wipers, and an overhead label-supply holder that delivers labels to said paste-applying label-picker devices in a direct line with said bottle-supporting device; the parts being arranged for operating in common axial alignment with each other perpendicular to the planes of the picker-devices and bottle-supporting device, substantially as set forth."

"(6) In a labeling machine, the combination, of an open-bottomed label-holder, pickers adapted for singly disposing the labels, wiping-on devices, and means for bringing the label-holder into conjunction with the pickers for delivering a label from the open-bottom onto said pickers by a movement perpendicular to the plane of the picker faces."

In defining in his specification, as appears above, the "embodiment" of his invention, Woodland says that the organization comprises "an upwardly and downwardly movable label-holder, from the bottom of which the labels are delivered directly over said bottle supporter"; and it is clear that this movable "label-holder" or label box is a necessary and important feature in this machine—a feature requiring a different organization from a machine having a fixed label box.

In my opinion, all the above claims are limited to an organization which contains this feature, and, since the defendants' machine does not contain this feature, it does not infringe these claims. The defendants' machine, as appears from the Ermold patents, has a stationary label box and an organization which is different in many ways.

In saying that claim 4 is limited to this feature of a downwardly moving label box, I interpret the words of the claim, "an overhead label-supply holder that delivers labels to said paste-applying label-picker devices in a direct line

with said bottle-supporting device," as referring to the "upwardly and downwardly movable label-holder," described in the "embodiment" of the invention in the specification; and I give the same construction to the language in the other broad claims relied upon in which reference is made to the label-holder or carrier.

With respect to the vertical alignment feature of these claims, which the complainant regards as most important, it surely cannot be said that Woodland is entitled to a broad patent covering all bottle-labeling machines, however constructed and organized, which have their parts arranged vertically above the bottle and attach the label to the upper side of the bottle. If evidence had been introduced to the effect that all prior labeling machines had been a failure and that Woodland was the first to solve the problem by organizing the parts in vertical alignment above the bottle, it might afford some basis for the broad construction of these claims contended for by the complainant. There is, however, no evidence to support any such proposition.

The next claim in issue is claim 12, which reads as follows:

"(12) In a labeling machine, the combination with a bottle-supporting rest, of movable wipers, a reciprocating wiper-carrying mechanism, and means whereby said wipers are moved inward to act closed together when passing the bottle rest in one direction, and means whereby said wipers are opened or separated, and kept clear from contact therewith when passing said rest in the opposite direction."

As already mentioned, the wipers in this machine perform the double function of wipers and grip finger. When, therefore, this claim says, "And means whereby said wipers are moved inward to act closed together when passing the bottle rest in one direction," it clearly refers, when read in connection with the specification, to wipers which, when "closed together," act as grippers to hold the label upon the bottle. This is the natural construction of the claim, and, when so construed, it is not infringed, since the Ermold machine employs a grip finger and the wipers are not "closed together," either in fact or for the purpose of the Woodland machine. Further, with regard to the last element in this claim, it cannot be said, in view of the prior art, that Woodland is entitled to all "means whereby said wipers are opened or separated, and kept clear from contact therewith when passing said rest in the opposite direction," although he might fairly be entitled to a patent for such specific means as he employs for accomplishing the result and what might fairly be considered the equivalent thereof. Upon this last point there is no evidence that the Ermold machine uses the same or what should be regarded as equivalent means.

The next claim in issue is claim 36, which reads as follows:

"(36) In a labeling machine, an open-bottomed label-holder comprising means for guiding the edges of a pile of labels, and inward projections at the foot thereof that support the labels; in combination with pasting picker-devices adapted to take or receive a label therefrom, and a follower for retaining the pile of labels in opposition to the contact of said picker-devices; said follower provided with means for affording a slight yielding or elastic action succeeded by rigid resistance to the pressure of said pasting picker-devices, when taking a label from the label-holder."

The important element in this claim is "a follower for retaining the pile of labels in opposition to the contact of said picker-devices; said follower provided with means for affording a slight yielding or elastic action succeeded by rigid resistance to the pressure of said pasting picker-devices, when taking a label from the label-holder."

This feature is illustrated in the following drawing from the patent:

With respect to this feature, the specification says:

"As a means for keeping the labels in a firm pile upon the label-holder, there is employed a follower device adapted for automatic free movement in one direction and for self-locking to positively resist movement in the opposite direction, so that a constant pressure is maintained upon the decreasing pile of labels and the pile held secure against lifting when brought into contact with the pasting pickers. This follower is preferably constructed as a simple finger 69 (see Figs. 4 and 8) arranged upon an upright standard 70 fixed in the top of the carrier slide C, or label-holder support. Said standard is formed rectangular, or of other suitable cross-section; and the opening 71 in the head of the follower-finger is formed to approximately fit the standard at the sides, and at the front upper part of the opening, or off-set, while it is larger below at the front edge, so that while the fingers can freely slide down the standard, it will immediately lock or cramp upon the standard and resist upward movement or pressure exerted at the outer end of the finger which rests centrally upon a plate 72 laid upon the top of the pile of labels. By this means the labels are held flat and firmly sustained to meet the pressure of the pickers when the label-holder with the pile of labels descends thereon. The finger automatically follows down the standard as the labels are fed off the bottom of the pile."

Again the specification says:

"The label-follower finger is, when so desired, made to give an elastic pressure upon the pile of labels or follower-plate resting thereon. For this purpose the finger is provided with a spring 69a secured upon the finger 69 (see Fig. 4) and adjusted so as to permit a slight yield of the spring before the finger gives a rigid resistance, as the bottom of the pile of labels is, by downward movement of the label-holder, pressed upon the pickers. This slight elasticity avoids the liability of the underlying labels becoming so firmly compressed upon the projection t at the bottom delivery, as to cause tearing of the bottom label when drawn therefrom by the paste-applying pickers."

Upon reading the Woodland specification in connection with the drawings, it is apparent that Woodland was addressing himself to the problem of de-

vising means for securing "a slight or elastic yielding action succeeded by a rigid resistance" in a machine in which the label box moved downward to the pickers.

On the other hand, it will be found upon an examination of the Ermold patent, No. 950,259, that Ermold was addressing himself to the solution of another problem caused mainly by the different organizations of the two machines. The specification of the Ermold patent says:

"This invention relates to improvements in bottle-labeling machines by which a regular and uniform supply of labels to the pickers is secured, and more especially to an improved label-supply mechanism for the bottle-labeling machine for which letters patent No. 923,501 were granted to me on June 1, 1909. In the patent referred to a horizontal presser-bar was used for pressing on the tops of both piles of the labels in two label-receptacles, one for the body-labels and the other for the neck-labels. This supply mechanism worked very satisfactorily when the piles of labels in the receptacles were of equal height, but when in working the bottle-labeling machine one pile or the other in said receptacles gradually became of different height, then an unequal pressure on the piles of labels resulted, so that sometimes more than one label was delivered to the pickers at the lower end of one or the other receptacle.

"The object of this invention is to overcome this objectionable feature and to improve the label-supply mechanism in such a manner that each receptacle delivers its labels to its corresponding pickers independently of the delivery of the labels by the other receptacle, whether the piles of labels in the label receptacles are of uniform height or not; and for this purpose the invention consists of a label-supply mechanism in which an upright presser-bar is arranged for each pile of labels in the label-receptacles, which presser-bars are guided independently of each other in separate holders guided on a stationary horizontal slotted guide-bar, said holders being provided with pivoted and weighted pawls that engage ratchet-teeth of the upright presser-bars, the presser-bar for the body-labels being provided with recesses at its upper and lower end for guiding an auxiliary presser-bar provided with guide-studs at its upper and lower ends and connected with the presser-bar by an equalizing spring, so that each pile of labels receives an independent pressure from its respective presser-bar, regardless of the quantity of labels in the respective receptacles. * * *

"Alongside of the upright presser-bar $d$ for the pile of body-labels is guided an auxiliary presser-bar $d^2$ by means of headed guide-pins $d^3$ at its upper and lower ends that are guided in recesses $d^4$ at the upper and lower ends of the presser-bar $d$. The upper guide-pin $d^3$ is connected by a helical spring $d^5$ with a stud-pin $d^6$ on the presser-bar $d$. The lower end of the auxiliary presser-bar $d^2$ rests on the top of the pile of body-labels and takes up the vibrations and shocks to which the body-label receptacle is exposed when the pickers arrive below the same. The larger body-labels are subjected to a greater degree of vibrations and shocks than the smaller neck-labels. These vibrations are neutralized by the spring-connection of the auxiliary presser-bar with the main presser-bar, so that a regular feed of the body-labels independently of the neck-labels is securely established."

The following cuts from the patent illustrate the Ermold follower:

An examination and comparison of the specifications and drawings of the Woodland and Ermold patents show, in my opinion, that the Ermold follower was designed for a different purpose from that of the Woodland follower, and that it differs from the Woodland follower both in construction and mode of operation.

The next claim in issue is claim 59, which reads as follows:

"(59) In a labeling machine, the combination, of an open-topped, bottom delivery label-holder, comprising guides for the sides of a pack of labels and guides for the ends of said pack of labels, said guides arranged to afford a continued through-feed passage for the labels, means disposed outside the line of said passage for adjusting said label-holder guides to accommodate different sizes of labels, without changing the relative position of the central plane of the pack in respect to the attaching mechanisms, paste-applying pickers that coact with the bottom end of said guides for releasing and downwardly removing the single labels from said pack, and downwardly acting wipers for affixing said label to a bottle, or like article, underneath said label-holder."

With respect to this claim, the complainant's brief says:

"Claim 59 has special reference to the combination with the pickers and wipers of a label receptacle having movable side walls or guides which may be adjusted laterally in such manner as to accommodate labels of different size without changing the relative position of the central plane of the label pile with respect to the label-attaching mechanism, thus maintaining the vertical alignment of the labels and the co-operating parts located beneath them."

I am of the opinion that, in view of the prior art, there was no patentable novelty in this adjustable feature of the label box to accommodate itself to different sizes of label, and hence that Ermold was at liberty to use the specific form of adjustable label box device which is described in his first patent.

We come now to the second Woodland patent, No. 941,178. The distinguishing features of this machine as compared with the machine of the first Woodland patent are, first, the label box is stationary instead of movable; second, it has a grip finger which was absent from the first Woodland machine; and, third, it attaches two labels instead of one, as in the first Woodland machine.

In describing the invention, its objects, and in what it consists, the specification of this patent says:

"Be it known that I, Frank O. Woodland, a citizen of the United States, residing at Worcester, in the county of Worcester and state of Massachusetts, have invented a new and useful labeling-machine, of which the following, together with the accompanying drawings, is a specification sufficiently full, clear, and exact to enable persons skilled in the art to which this invention appertains to make and use the same.

"The prime object of my present invention is to provide a more desirable, convenient, and practically efficient mechanism for the purpose named, and to render the various parts and combinations peculiarly suited for performing their respective functions for the affixment of labels in a sure, expeditious and satisfactory manner.

"Another object is to provide a machine of the character described, having facilities for the delivery and affixment of a plurality of separate labels simultaneously at one operation of the machine.

"Minor objects and features of the invention are set forth and explained in the following detailed description.

"My invention consists in mechanism organized for operation substantially as set forth, and in the parts and novel combinations of parts as explained and illustrated; the particular subject-matter claimed being hereinafter definitely specified.

"In the accompanying seven sheets of drawings, Figure 1 represents a front view of a labeling machine embodying my invention, the supporting base and standard being omitted."

This figure is illustrated in the following cut:

The three broad claims in issue are as follows:

"(6) In a labeling machine, in combination, a bottom-delivering label-holder comprising means for supporting labels at their edges and adapted for the downward extraction of single labels therefrom, a stationary bottle rest, an intermediately acting means for gripping a label against the top surface of a bottle laid upon said rest, a reciprocating picker-carrier, picker devices mounted upon said carrier and movable directly to and from the bottom delivery of the label-holder, said pickers provided with glue-applying faces that receive the label, means for retracting the gripping devices out of the path of the label-feed, and means for supplying glue to the picker-faces while they approach the label-holder."

"(10) In a labeling machine, in combination, a stationary underlying bottle-rest, vertically reciprocating pickers, a wiper mechanism, an overhead top-chargeable bottom-delivering label-holder, a movable grip-finger disposed above the bottle-rest and beneath the label-holder, and having its end pivoted to the frame in rear of the bottle-receiving space, to swing down upon the bottle and upward and backward beneath the label-holder, and means for operating said grip-finger.

"(11) In a bottle-labeling machine, in combination, an upright supporting-frame having a forward projecting top member, an underlying bottle-rest supported upon a lower front portion of said frame, a top-chargeable, bottom-delivering label-holder removably supported upon said top member of the frame and projecting forward over said bottle-rest, a vertically reciprocating picker-carrier having horizontally-projecting glue-applying pickers secured thereon, guiding means that directs said picker-carrier to carry the pickers perpendicular to the plane of the labels, to and from the label-holder, a label-gripping means disposed between the label-holder and bottle-rest and hingingly connected with the frame adjacent to the rear of the bottle-receiving space to swing down upon the presented label and up to an approximately upright position beneath the label-holder, actuating connections for operating said gripping means and said picker-carrier, and a wiper-carrier having opposite arms carrying means for wiping down the ends of the labels at either side of the bottle."

The difficulty with these claims is their breadth; in other words, in their failure to claim the mechanism which Woodland describes in his specification and which constitutes his real invention.

When Woodland says in his specification that "my invention consists in mechanism organized for operation substantially as set forth, and in the parts and novel combinations of parts as explained and illustrated," it is clear that what he invented was the mechanism of the machine shown in the drawings and described in the specification; and it follows that all he is entitled to

claim as his invention is this mechanism, or what may be fairly considered the equivalent thereof.

If we assume that these claims are not void by reason of the general terms in which they are expressed, but are valid when limited to the means by which their several elements are operated and adjusted, or the equivalent thereof, then the evidence fails to show infringement, since it fails to point out that the mechanism of the Ermold machine is the same as that of the Woodland machine, or the equivalent thereof. In view, therefore, of the broad language of these claims, coupled with the lack of evidence before the court, we must hold that the complainant has not made out a case of infringement.

Claims 42, 43, 44, 45, 46, and 67 comprise the next group relied upon. Of these claims it is sufficient to cite the first two:

"(42) In a labeling machine, a reciprocating picker-carrier with glue-applying pickers thereon, a label-holder for supplying labels to said pickers and means for shifting the label-holder out of reach of said pickers.

"(43) In a labeling machine, the combination, of a bottom-delivery label-holder, a reciprocating picker-carrier with glue-applying pickers thereon that move into conjunction with said label-holder for receiving the label, and means for temporarily shifting the label-holder beyond the reach of said pickers, for the purpose set forth."

The important feature in this group of claims is "means for shifting the label-holder beyond the reach of said pickers."

With respect to these claims, it is sufficient to observe that I am unable to find any patentable novelty or invention either in the idea of lifting the label-holder out of reach of the pickers, which is no more than the shifting of one part of a machine out of engagement with the other parts, or in the specific means described by Woodland for accomplishing this result.

We come now to what the complainant calls the "slanting bottle rest claims," namely, claims 27, 28, 59, 60, and 71. Of these claims we will only cite the first named:

"(27) In a labeling machine for affixing labels to bottles, a means for supporting a plurality of packs of labels; in combination, with a rearwardly and downwardly inclined rest for the bottle, and means for clamping a plurality of labels on the bottle, opposite to said rest."

In my opinion, there is nothing which rises to the dignity of an invention in these claims; in other words, it was within the skill of an ordinary mechanic to construct a bottle rest which is "rearwardly and downwardly inclined," or at such an inclination that the bottle would be better presented for affixing the label thereto.

The remaining claims, 30 and 31, relate to a minor feature of the patent having special reference to the label box and the positioning of the compartments in their relation to each other. Claim 30 reads as follows:

"(30) In a labeling machine, a duplex bottom-delivery label-holder provided with a compartment having its front and rear label-guiding members carried by supports that are slidable on guides or side-bars parallel with the plane of the labels toward and from its other compartment, for adjusting the position of the label-holding compartments in relation to each other, and means for securing the same at adjusted positions."

With respect to these claims, I find no invention by reason of the prior art.

In conclusion, it may be observed that I do not agree with the complainant's main contention with respect to the first Woodland patent, namely, that the broad "vertical organization" claims of that patent should be "held to cover any machine which they aptly describe, though specifically different from the machine of the patent." Such a broad construction would only be justified, in my opinion, upon some satisfactory proof that Woodland was the first to invent a successful machine for attaching labels to bottles and that this was accomplished by his vertical organization and arrangement of the several parts.

It is a familiar rule that the range of equivalents depends upon the breadth and importance of the invention. Now there is no substantial evidence in the record that the first Woodland patent covered a broad and useful invention,

or that this invention represented a marked advance in the art, or that the machine embodying this invention was materially better than prior machines. Only one machine was constructed after this patent, and this machine can hardly be said to have made a favorable impression upon the art.

Nor can I accept as sound the complainant's proposition that the "vertical organization" claims of the first Woodland patent are generic, and that the "vertical organization" claims of the second Woodland patent are specific, in the sense that the second Woodland patent is for a specific form of a broad generic invention covered by the first Woodland patent. An inspection and analysis of the second Woodland patent shows, to my mind, that it covers, and was intended to cover, many specific improvements in bottling machines in an advanced and highly developed art. While it may be said that in both these patents the parts are arranged in vertical alignment above the bottle rest, still the two machines, as already pointed out, are quite different in the organization of their several parts and in the results accomplished.

I have reached the foregoing conclusions upon the best consideration that I have been able to give to this case upon the evidence which is presented in this record; and it follows that a decree must be entered dismissing the bill, with costs.

Oliver Mitchell, of Boston, Mass., for appellant.

Leo J. Matty, of New York City (Brown, Raegener, Moody & Matty, of New York City, on the brief), for appellee.

Before PUTNAM, DODGE, and BINGHAM, Circuit Judges.

PUTNAM, Circuit Judge. This is a suit for the infringement of claim 1 of a patent issued to John J. Gaynor, No. 705,832, July 29, 1902, and of numerous claims in two patents issued to Frank O. Woodland, Nos. 937,403 and 941,178, respectively, October 19, 1909, and November 23, 1909. The bill was dismissed on its merits, and thereupon the complainant appealed to us.

The facts are stated so fully in the opinion of the learned judge in the District Court that we need not state them here, only so far as may be necessary to elucidate our positions. As the parties are still arranged in the same order, we describe the complainant in the District Court as still complainant.

[1] The first claim of the Gaynor patent is as follows:

"(1) In a labeling-machine, oppositely-placed pairs of label-carrying plate that bring the labels into position against the neck and body of the bottle or the like for being affixed, and a label-holder that conforms to the neck and body of the bottle and which enters between said plates and holds the labels centrally lengthwise against the neck and body of the bottle while being affixed."

The District Court held that on its face this is a broad claim for any label-holder which conforms to the neck and body of the bottle, and which enters between the plates as stated in the claim; that in the light of the prior art the main features, broadly speaking, were old; that therefore it was necessary to limit the claim to the particular features pointed out in the specification; and that, so limiting it, the claim was not infringed.

The propositions of the parties fail to enlighten the case as made by the District Court, and they consist in nothing of consequence beyond extracts from the opinion filed therein. The complainant now maintains that the District Court erred in holding that the claim was

to be limited to the specific embodiment shown in the specification. This, however, is not important, because, whether the claim is broad or whether it should be limited to the specific embodiment shown in the specification, our conclusion is that, in either event, the decree on that claim must be for the respondents. The learned judge of the District Court held that, if the claim was broadly construed, the main features were old; and limiting the claim in the way he did it was not infringed. Consequently, so far as that claim was concerned, in either event, he held for the respondents; and we agree with him. Therefore the result, in either view of the construction of the claim, must be that the bill be dismissed so far as it is concerned.

[2] With reference to the two patents to Woodland, and the very numerous claims which each of them contains, and the very considerable proportion of those claims which have been brought to our attention, the District Court carefully examined them, and made detailed statements and decisions in reference to each thereof. With the views we have reached, it would be useless labor, and of no advantage to the profession or any one else, to go again over the details of what can never become a precedent. As stated by the opinion in the District Court, the Woodland machines in litigation here relate to an "advanced and highly developed art." A large portion of the claims evidently contain nothing in the nature of patentable invention. All of them cover very narrow and limited subject-matters, as to which the range of equivalents is necessarily very small, so that infringement is not sustained as to any which involve patentability, for the reasons stated in the opinion appealed from.

The decree of the District Court is affirmed; and the case is remanded to that court, with directions to dismiss the bill, with costs for the respondents in both courts.